UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE LOISELLE,

       Plaintiff,                   Civil Action No. 08-12513

v.                                HON.   ARTHUR J. TARNOW
                                U.S. District Judge
                                HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Julie Loiselle brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion be DENIED and Plaintiff's Motion GRANTED to the extent that the case be remanded for further proceedings consistent with this report.

## PROCEDURAL HISTORY

Plaintiff originally applied for benefits on June 10, 2002, alleging disability as of May 14, 2001 (Tr. 36-37).  After the initial denial of her application, she filed a request for an administrative hearing, held on February 4, 2004 in Oak Park, Michigan (Tr. 36).  On

March 22, 2005, Administrative Law Judge ("ALJ") Alfred H. Varga found that although Plaintiff was unable to perform her past relevant work, she retained the ability to perform a significant range of light work (Tr. 44). On October 3, 2005, Plaintiff reapplied for benefits, alleging a new disability onset date of March 23, 2005 (the day following ALJ Varga's decision) (Tr. 386). After the initial denial of the second claim, Plaintiff requested an administrative hearing, held on June 19, 2007 in Oak Park, Michigan before ALJ Jerome B. Blum (Tr. 377). Plaintiff, represented by non-attorney Cynthia Lachowski, testified, as did Vocational Expert ("VE") Elizabeth Pasikowski (Tr. 377-386, 386-388). In a decision issued on October 15, 2007, ALJ Blum found that Plaintiff could perform a range of sedentary work (Tr. 19). On April 11, 2008, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on June 12, 2008.

## BACKGROUND FACTS

Plaintiff, born May 15, 1971, was age 36 when the ALJ issued his decision (Tr. 18). She graduated from high school and completed four years of college (Tr. 67). She worked previously as a customer service representative, data entry clerk, file clerk, office manager, receptionist, and waitress (Tr. 73). Plaintiff alleges disability as a result of migraine headaches, fibromyalgia, neurogenic stuttering, depression, irritable bowel syndrome ("IBS"), and Carpal Tunnel Syndrome ("CTS") (Tr. 60).

### A.    Plaintiff's June 19, 2007 Testimony

Plaintiff alleged that fibromyalgia, insomnia, severe migraines, restless leg syndrome,

chronic fatigue, neurogenic stuttering, CTS, and muscle spasticity prevented her from working, opining that her condition had worsened since she was denied benefits in March, 2005 (Tr. 378). She testified that pain from fibromyalgia was similar to the muscle aches from a "severe flu," adding that she currently used hot packs, analgesics, stretching exercises, a TENS unit, and massage and pool therapy to ease her discomfort (Tr. 379). Plaintiff also reported using Ibuprofen or Fentanyl patches, opining that the condition was exacerbated by stress and muscle strain (Tr. 379). She reported experiencing "bad days" four to five times a week at which time she was confined to her bed (Tr. 380). She estimated that she spent 60 percent of her waking hours reclining (Tr. 381). She also alleged daily migraine headaches (Tr. 380).

Plaintiff estimated that she could walk a maximum of "six to seven minutes," and sit or stand for 10 minutes before experiencing difficulty (Tr. 381). She alleged that as a result of hand numbness caused by CTS, she experienced difficulty writing, holding objects, and driving (Tr. 382). She estimated that she was unable to lift more than six or seven pounds, adding that she cared for her five-year-old child with the help of her parents, brother, and friends (Tr. 382). She reported that she also relied on her parents and neighbors to clean her house, perform yard work, and take her grocery shopping (Tr. 382-383). Plaintiff alleged that she slept for two to four hours a night, but napped during the day (Tr. 383).

Plaintiff reported that she continued to receive treatment for depression and anxiety, noting that her anxiety medication partially relieved symptoms of anxiety (Tr. 383-384). She estimated that she experienced panic attacks three times a week for 20 minutes at a time (Tr.

384-385).   Plaintiff opined that fatigue, chronic pain, and medication side effects precluded all work (Tr. 385).

**B.     Medical Evidence**

**1.  Treating Sources[1]**

In March, 2002, language pathologist Richard Merson, PhD noted that Plaintiff had begun stuttering one day after delivering her son on November 17, 2001 (Tr. 159). Dr. Merson noted that Plaintiff was otherwise "a healthy, well-adjusted young mother with a healthy baby boy" (Tr. 159).   Imagining studies of Plaintiff's brain showed normal results (Tr. 171-172, 236-237).   A June, 2002 MRI of the brain showed unremarkable results (Tr. 169). November, 2003 therapy notes show that Plaintiff experienced the side effect of hallucinations after taking Mobic (Tr. 204).   In January, 2004, Plaintiff was prescribed Wellbutrin (Tr. 203).   June, 2004, therapy notes indicate that Plaintiff took Effixor and was "feeling a little bit better" (Tr. 198).   In October, 2004, rheumatologist J. Patricia Dahr, M.D. examined Plaintiff, opining that Plaintiff's "migraines and stuttering [were] related to [a] psychiatric disorder" (Tr. 233).   She also observed that "[t]he stuttering sounds like it has a psychiatric origin rather than organic" (Tr. 233).

In November, 2004, Rizwan Qadir, M.D., noting that Plaintiff currently required domestic help to complete her housework due to migraines, possible fibromyalgia, and

---

[1]

For the purposes of Plaintiff's current application for benefits, consideration of her condition prior to ALJ Varga's March 22, 2005 non-disability opinion is barred by *res judicata.*  Her treating records before that date are discussed for background purposes only.

depression, opined that he "[did] not think that she can work anywhere at this time because of multiple medical problems" (Tr. 168). In March, 2005, Dr. Qadir noted that Plaintiff's muscle pain was "not severe, but . . still persistent," observing that Plaintiff was exercising on a regular basis (Tr. 166). He reported that nerve conduction studies and a needle examination showed normal results (Tr. 336). The same month, Plaintiff indicated that therapy was helping her mood, reporting to her physical therapist that on average, she experienced level "five" pain (on a scale of one to ten) (Tr. 190). A letter from the office of Robert Piccinini, D.O. written the same month indicates that she had not attended therapy sessions since December, 2004 (Tr. 191).

In May, 2005, physical therapy intake notes state that Plaintiff reported pain with all movement (Tr. 146). Treating notes from the following month indicate that Dr. Qadir recommended stretching exercises and pool therapy (Tr. 163). In July, 2005, Dr. Qadir noted that Plaintiff reported stress as a result of her ongoing divorce proceedings (Tr. 162). August, 2005 physical therapy discharge notes state that Plaintiff continued to report level "ten" pain on a scale of one to ten, but that physical therapy had decreased the intensity of her headaches (Tr. 137). The notes also state that Plaintiff had "improved in transfers, lifting and dressing" (Tr. 138). Also in August, 2005, Dr. Merson found that Plaintiff's speech had "improved in daily functionality," noting further that her "dominant hand writing impairment" had also improved (Tr. 152). Dr. Qadir noted the same month that Plaintiff had experienced "some relief" after receiving facet joint nerve blocks at C5-C6 and C6-C7 (Tr. 161). In September, 2005, a sigmoidoscopy showed the presence of "[m]ild irritation of the

-5-

internal hemorrhoids," but no other abnormalities (Tr. 178).

A December, 2006 EMG study of the upper extremities showed normal results, consistent with March, 2006 test results showing the absence of radiculopathy (Tr. 313, 322). Dr. Qadir nonetheless found "electrodiagnostic evidence of a bilateral median sensory neuropathy across the wrist" (Tr. 313). In January, 2007, Dr. Qadir noted that Plaintiff had tested negative for sleep apnea (Tr. 309, 310).

In April, 2007, Dr. Piccinini completed a questionnaire, opining that Plaintiff experienced *marked* restrictions of daily living and social functioning, and *moderate* concentrational deficiencies (Tr. 366). He also found that Plaintiff had experienced four or more episodes of decompensation, concluding that Plaintiff's condition would typically require her to miss more than two days of work each month (Tr. 366-367, 370). Dr. Piccinini also found that Plaintiff experienced panic attacks, stuttering, and difficulty in speech, noting that she would be unable to adhere to work-like procedures, understand simple instructions, maintain concentration, ask simple questions, or accept instruction or criticism from supervisors (Tr. 368, 371). He concluded that Plaintiff's ability to perform various work-related responsibilities was either "fair" or "poor" (Tr. 373-374). In May, 2007, Dr. Qadir, noting that Plaintiff reported level seven to ten pain on a scale of one to ten, prescribed physical therapy (Tr. 299-300). The same month, Plaintiff opined that her she felt worse as a result of weight gain, but denied other medical problems (Tr. 344).

In June, 2007, Dr. Qadir found that Plaintiff experienced fatigue 67-100 percent of the time and would typically experience impairments requiring her to miss more than two days

-6-

of work each month (Tr. 301, 304, 305).  He also found that Plaintiff experienced headaches "every day" as a result of noise, physical activity, light, stress, head movement, fatigue, and eye strain, noting that the headaches were accompanied by vertigo, nausea/vomiting, malaise, photosensitivity, visual disturbances, mood changes, and an inability to concentrate (Tr. 302-303).  He also found that Plaintiff experienced the medication side effects of sedation, dizziness, and lightheadedness, concluding that Plaintiff was "incapable of sedentary work on a sustained and full-time basis" (Tr. 304-306).   The same month, Plaintiff completed a self-evaluation stating that her psychological condition remained unchanged (Tr. 342).  She denied suicide ideation, recent medical problems, or medication side effects (Tr. 342).

### 2.  Consultive and Non-Examining Sources

 In December, 2005, L. Banerji M.D. examined Plaintiff on behalf of the SSA, noting a restriction of the hip and knee joints "due to obesity," but no muscle atrophy (Tr. 220). Dr. Banerji observed that Plaintiff stuttered, but demonstrated normal cognitive abilities, a normal gait, and "[n]o loss of dexterity of movements of the fingers" (Tr. 220).

The same month, a Physical Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally and 10 frequently; stand, walk, or sit for six hours in an eight-hour workday; and push and pull without limitation (Tr. 108).  The Assessment limited Plaintiff to *occasional* climbing of ramps and stairs, balancing, kneeling, crouching, and crawling; *frequent* (as opposed to constant) stooping; and a complete preclusion on the climbing of ladders, ropes, or scaffolds (Tr. 109).  The Assessment found the absence of

-7-

manipulative, visual, or environmental limitations but determined that Plaintiff's stuttering created communicative limitations (Tr. 110-112). The Assessment concluded that Plaintiff's "alleged symptoms are somewhat consistent with the medical evidence," but that "[the] severity of limitations seem[ed] overstated," concurring with ALJ Varga's March 22, 2005 finding that Plaintiff was capable of light work (Tr. 112-113).

In February, 2006, a Psychiatric Review Technique ("PRT") found the presence of both depression and anxiety (Tr. 118, 120). Plaintiff was deemed *mildly* restricted in activities of daily living and *moderately* restricted in social functioning and maintaining concentration, persistence, or pace (Tr. 125). The Technique noted the absence of extended episodes of decompensation (Tr. 126). The same month, a Mental Residual Functional Capacity Assessment found that Plaintiff experienced *moderate* limitations in her ability to understand, remember, or carry out detailed instructions; maintain attention and concentration for extended periods; and work without being distracted by coworkers (Tr. 130). Consistent with the PRT, Plaintiff was also deemed *moderately* limited in her ability sustain concentration, get along with coworkers, and respond appropriately to workplace changes (Tr. 130). The Assessment concluded that Plaintiff was capable of unskilled work (Tr. 131).

### C.   Vocational Expert Testimony

VE Elizabeth Pasikowski classified Plaintiff's previous work as exertionally sedentary to light, noting that Plaintiff's alleged limitations as a result of CTS would preclude her

former jobs requiring the use of a computer[2] (Tr. 386).  ALJ Blum then posed the following question to the VE:

> "So therefore, we're left with unskilled, sedentary jobs where she wouldn't have to constantly use her fingers.  I assume they would be service jobs, would they not?"

(Tr. 387).

The VE testified that given the above limitations, Plaintiff could perform the sedentary, unskilled work of an ID clerk (1,400 jobs in the metropolitan Detroit area); video surveillance monitor (1,700); information clerk (1,800); and visual inspector (2,100) (Tr. 387).  The VE found that if Plaintiff's allegations of pain from fibromyalgia, "almost-daily headaches," and the need to elevate her legs were considered, all full time work would be precluded (Tr. 388).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, ALJ Blum determined that Plaintiff experienced the severe impairments of fibromyalgia, bilateral CTS, and encephalopathy; finding however that none of the conditions, considered individually or in combination, met or equaled any impairment listed in Appendix 1, Subpart P, 20 CRF Part 404 (Tr. 16).  He found that Plaintiff

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

retained the residual functional capacity ("RFC") for "unskilled sedentary nonindustrial service work with no fine manipulation" (Tr. 17). Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform any of her past relevant work she could perform unskilled sedentary "clerical, surveillance, and inspection jobs" (Tr. 19).

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely credible" (Tr. 18). In support of this determination, he noting as follows:

> "The claimant overstated her symptoms at the hearing in view of the rather mild findings. Her function report, which shows a lot of writing, demonstrates that she was still able to prepare meals, do laundry, drive, go shopping, scrapbook, and visit with friends"

(Tr. 18). The ALJ noted that while Plaintiff "had many complaints," the alleged severity of conditions was unsupported by objective medical evidence (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

-10-

without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-11-

## ANALYSIS

### A.  Step Two  Findings

Plaintiff argues first that the ALJ erred by failing to include obesity, depression, and anxiety among her "severe" impairments at Step Two of his analysis. *Plaintiff's Brief* at 14, *Docket #15.* She contends further that the ALJ's erroneous omission of these conditions at Step Two invalidated his Step Three finding that her various health problems, even considered in combination, did not render her disabled under the listings. *Id.* Plaintiff also argues that while the ALJ recognized that fibromyalgia was a severe impairment at Step Two, he failed to comply with SSR 99-2 in analyzing the condition. *Id.* at 16.

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS* , 773 F.2d 85, 89 (6th Cir. 1985). An impairment can be considered "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Id.,* 773 F.2d at 90 (*citing Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)).  20 CFR § 416.921(a) defines a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities."   The same regulation defines "basic work activities" as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work  setting." *Id.*

-12-

First and most obviously, Plaintiff's present argument that obesity created any workplace limitations whatsoever is undermined by her failure to raise this allegation at the administrative level:

> ALJ (June 19, 2007 administrative hearing): Ms. Loiselle, what is the reason - - or what are the conditions or the limitations that are preventing you from working now?
>
> Plaintiff: I have fibromyalgia, insomnia, severe migraines, restless leg, chronic fatigue, neurogenic stuttering, carpal tunnel, muscle spasticity."

(Tr. 378).

Plaintiff, later prompted by the ALJ, testified that she also experienced depression and anxiety, but at no point alleged that she experienced limitations as a result of obesity.

Moreover, while Plaintiff argues that the ALJ overlooked her obesity-related limitations, in fact, the ALJ noted the history of obesity in Plaintiff's medical records, including findings that obesity created limited hip and knee movements (Tr. 16). The ALJ's Step Five conclusion limiting Plaintiff to sedentary work is not inconsistent with treating source material. The omission of an impairment at Step Two, by itself, even where substantial evidence supports the presence of a work-related limitation, does not by itself require remand. *See Street v. Barnhart* 340 F.Supp.2d 1289 (2004), 1293 -1294 (M.D.Ala.,2004); *See also Moran v. Commissioner of Social Security* 2003 WL 22002432, *2 (E.D.Mich.,2003)(Lawson, J.); *Leeper v. Sullivan* 1990 WL 77874, 2 (N.D.Ill.1990).

The ALJ's omission of either anxiety or depression at Step Two is a closer call. The ALJ's finding that "[t]he actual record does not verify a severe mental impairment under the Act," is at least partially supported by the record (Tr. 18). He observed that Plaintiff's own

-13-

description of her regular activities, including child care, caring for her cat, housework, shopping, church, driving, and socializing stood at odds with her allegations of mental impairments (Tr. 18, 88-98).   Further, while Plaintiff's October, 2005 claim for benefits alleges depression, she submitted a medication list which made no mention of medication for either anxiety or depression, indicating instead that she took Effexor and Elavil for fibromyalgia, IBS, and/or migraines   (Tr. 66).   Likewise, Plaintiff's January, 2006 handwritten narrative of her conditions and limitations omits both depression or anxiety (Tr. 95).

However, the ALJ's discrete finding that Plaintiff's claim of mental impairments "are not supported by the 'brief' psychiatric notes in the file" contradicts the record.  Medical notes created by Dr. Qadir from March, 2005 forward note a history of depression and anxiety (Tr. 330-333).   In January, 2006, Plaintiff reported ongoing anxiety (Tr. 356).  June through August, 2007 treating records showing that she was prescribed Wellbutrin (Tr. 340-341).  Likewise, the February, 2006, the non-examining PRT, based on the treating records, found the presence of both depression and anxiety (Tr. 118, 120).   The ALJ's erroneous conclusion that the psychiatric notes were "brief," or that they supported the omission of a mental impairment from the severe impairments, requires that the case be remanded to reconsider the Step Two findings as they relate to depression and anxiety.

## B.  Step Three Findings

Plaintiff, building on her Step Two anxiety/depression argument, claims next that she was entitled to a Step Three finding that fibromyalgia rendered her disabled.  Citing SSR 99-

-14-

2p, 1999 WL 271569, *5, she contends that the Step Two finding that she experienced fibromyalgia entitled her a disability finding at Step Three.

SSR 99-2p states that "in cases in which individuals with CFS [fibromyalgia] have psychological manifestations related to CFS, consideration should always be given to whether the individual's impairment meets or equals the severity of any impairment in the mental disorders listings in 20 CFR, part 404, subpart P, appendix 1, sections 12.00 ff. or 112.00 ff." Assuming that the ALJ correctly found the absence of psychological impairments at Step Two, he need not have considered them at Step Three - either independently or in combination with fibromyalgia.

However, assuming that upon remand, the ALJ finds severe mental impairments at Step Two, he would be required to apply SSR 99-2p at Step Three by considering the severe impairments of anxiety and/or depression along with fibromyalgia in determining whether Plaintiff was disabled. Nonetheless, the presence of fibromyalgia, with or without accompanying mental impairments does not guarantee a disability finding at Step Three. "A person with a condition of fibromyalgia certainly could have serious enough pain to have a disability under the Social Security Act, but the condition does not automatically qualify as a listing level impairment." *Bartyzel v. Commissioner of Social Security,* 74 Fed.Appx. 515, 527, 2003 WL 22025023, 11 (6th Cir. 2003); *See also Vance v. Commissioner of Social Sec.* 260 Fed.Appx. 801, 806, 2008 WL 162942, 4 (6th Cir. 2008)(*citing Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996). ("'Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [claimant]

-15-

is one of the minority.'")(citations omitted).  Therefore, this Court cannot direct a Step Three

disability finding, as Plaintiff requests.  Rather, the proper remedy is to remand for the ALJ

to reconsider his Step Two finding and, if severe mental impairments are found, to apply SSR

99-2p at Step Three.

### C. The Credibility Determination and Treating Physician Analysis

On a related note, Plaintiff, contending that the RFC found in the administrative

opinion did not reflect her true degree of limitation, argues that the ALJ's citation of  her

daily activities in support of the non-disability finding amounts to a misrepresentation of

record.  *Brief* at 15.  She also argues that the ALJ erred by discounting her treating

physicians' opinions that she was disabled.  *Id.* at 18-20 (*citing Walters  v. Commissioner of

Social Security,* 127F.3d 525, 529-30 (6th Cir. 1997).

While Plaintiff cites *Cole v. Commissioner of Social Security,* 2008 WL 4225775, *9

(E.D.Mich. 2008) for the proposition that "minimal daily functions" cannot, by themselves,

be used to show that she is capable of full-time employment, in the present case, ample

evidence in addition to Plaintiff's descriptions of her regular activities supports the ALJ's

finding.  First, Plaintiff's allegations that she was impaired by severely limited cognitive and

concentrational abilities is belied by her own well-articulated account of her recent medical

and personal problems (Tr. 95).   The four-page neatly  handwritten narrative is

grammatically correct, well-organized, and demonstrates appropriate and varied word usage[3]

---

[3]

Within the body of the narrative, Plaintiff states that "I have needed help writing and
preparing this information," but does not specify how others aided her (Tr. 97).  The

(Tr. 95-99).

Further, although Plaintiff alleges that limitations as a result of fibromyalgia precluded almost all physical activity, a consultive examiner noted her normal gait, ability to perform fine manipulations, and the absence of muscle atrophy (Tr. 220). Although Plaintiff claimed that her stuttering was the result of delivery complications during the birth of her son, Dr. Dahr, observing that Plaintiff's stuttering "wasn't the typical pathologic stuttering," expressed doubt that the stuttering was related to an organic condition (Tr. 233). Although Plaintiff presently alleges disability to fibromyalgia, IBS, depression, and anxiety, the March 22, 2005 administrative decision indicates that she originally claimed disability due to a completely different set of conditions ("vision problems, hypoglycemia, and high copper levels") (Tr. 37). As such, I find no error in the ALJ's credibility finding that Plaintiff exaggerated her limitations in an effort to obtain benefits. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *See also Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'"). For identical reasons, the ALJ was not required to include all of Plaintiff's professed limitations in the hypothetical question to the VE. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health &*

---

handwriting appears to match that of an accompanying "Function Report" (Tr. 87-94), which Plaintiff acknowledges she completed herself (Tr. 94).

*Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).[4]

Further, I disagree that the ALJ erred by discounting the disability opinions by Plaintiff's treating sources. In April, 2007, Dr. Piccinini completed a series of questionnaires indicating that Plaintiff experienced a number of *marked* social and occupation limitations suggestive of disability level impairments and only a fair or poor ability to complete work assignments (Tr. 366-374). Likewise, in May, 2007, Dr. Qadir completed a similarly organized questionnaire pertaining to Plaintiff's physical limitations, concluding that due to a plethora of conditions, she was unable to perform any work (Tr. 301-306). Nonetheless, the ALJ's treating physician analysis was both procedurally and substantively adequate, complying with the factors found in 20 C.F.R. § 404.1527(d)(2) by acknowledging "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)):

> "The questionnaires [by Dr. Qadir] indicating that the claimant would not have been able to work, are not entitled to controlling weight because they are cursory, not corroborated by the medical record, and appear to have been generated for the purpose of bolstering the claimant's case . . . . Likewise, the affective and anxiety disorder assessments [by Dr. Piccinini] contending that the claimant had a mental condition of Listing severity . . . appear to have been submitted so as to boost her case."

---

[4]

However, if upon remand, the ALJ finds that Plaintiff experiences the severe impairments of anxiety and/or depression, he must address those limitations in the hypothetical question. *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).

(Tr. 18).  The ALJ discounted  these opinions of extreme limitations on the basis that they were unsupported by the rest of the record, reasonably inferring that they were created just prior to the June, 2007 hearing in an attempt to win a disability ruling  rather than to present an accurate assessment of Plaintiff's condition (Tr. 18).  Dr. Piccinini's April, 2007 findings that Plaintiff experienced "marked" social limitations and an only "fair" ability to relate to co-workers or interact with a supervisor (Tr. 366, 373) are contradicted by Plaintiff's January, 2006 acknowledgment that she did not experience difficulty "[g]etting along with others" and experienced "good" relations with authority figures (Tr. 92-93).  Likewise, Dr. Dr. Qadir's June, 2007 assessment that Plaintiff experienced the medication side effects of sedation, dizziness, and lightheadedness (Tr. 304) is contradicted by Plaintiff's own June, 2007 statement denying recent medical problems or medication side effects (Tr. 342). Moreover, although Plaintiff contends that her physical therapist's May, 2007 notes confirm Dr. Qadir's assessment, the PT's assessment is based in large part on Plaintiff's allegations of limitation (Tr. 299-300).  Moreover, while Plaintiff faults the ALJ for failing to state that he considered the length of Plaintiff's relationship with the above sources, the administrative opinion contains a discussion of treating records  created more than two years before the October, 2007 administrative decision, adequately acknowledging Plaintiff's long-term relationship with her treating sources.

In closing, I note that on this record, the Plaintiff's testimony, along with her written submissions and physicians' assessments, represents an aggressive, but modestly supported effort to obtain a disability ruling, and this Court's recommendation for clarification of the

ALJ's Step Two findings, or indeed a finding on remand that the Plaintiff has a Step Two mental impairment, does not automatically entitle her to benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the appropriate remedy is a remand for further proceedings, consistent with this Report and Recommendation, at Steps Two, Three and (depending on the Step Three finding), Step Five.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion be DENIED and Plaintiff's Motion GRANTED to the extent that the case be remanded for further proceedings consistent with this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate

Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall  address specifically, and in the same order raised, each issue contained

within the objections.

                                         S/R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE

Date: July 6, 2009